## THE PEOPLE *v.* JUAN ANTONIO.

ACT CONCERNING INDIANS.—The Act of April 22d, 1850, for the protection and punishment of Indians, was intended to be applied to Indians in tribes, or when living in separate communities or companies, and not to a case where an Indian has been living among white men.

REPEAL OF ACT PRESCRIBING WHIPPING FOR LARCENY.—The Act of April 22d, 1850, conferring on Justices of the Peace the power to punish Indians convicted of larceny by whipping, is repealed by the Act of 1856, which prescribes the punishment for both grand and petit larceny.

JUSTICE'S JURISDICTION TO TRY INDIAN FOR GRAND LARCENY.—The Act of April 20th, 1863, concerning Courts of justice in this State, takes away from Justices of the Peace the power to try and punish Indians for grand larceny conferred upon them by the Act of April 22d, 1850, for the protection and punishment of Indians.

BURDEN OF PROVING HOW STOLEN PROPERTY WAS OBTAINED.—The burden of proving that stolen property found in his possession came honestly into his hands is not cast upon a defendant in a criminal case, unless the prosecution has introduced evidence, either direct or presumptive, sufficient to prove that he came dishonestly by it.

GENERAL OR SPECIAL VERDICT IN CRIMINAL CASES.—The Court cannot direct a jury, in a trial for larceny, to render a special verdict, but, upon the request of either party, it should instruct them that they have the discretion to render either a general or special verdict.

APPEAL from the County Court, Santa Cruz County.

The facts are stated in the opinion of the Court.

*D. E. Allison*, for Appellant.

*J. G. McCullough, Attorney-General*, for the People.

By the Court, RHODES, J.

The defendant was indicted and convicted of grand larceny. It was admitted by the District Attorney and was proven that the defendant was an Indian.

The most important question in the case arises upon the

refusal of the Court to give the jury the following instruction: "That the defendant cannot be convicted of larceny under the law as it is applied to Indians." The counsel for the defendant claims that the defendant, being an Indian, is liable to be prosecuted and punished for the offense charged against him, according to the provisions of an Act for the protection and punishment of Indians, passed April 22, 1850, and not under the general statutes concerning crimes and punishments. The Act of 1850 for the protection and punishment of Indians was, in our opinion, obviously intended to be applied to Indians in tribes, or when living in separate communities or companies, and not to a case where an Indian has been living, as in this case, for years among white men.

But if this view is incorrect, there are other reasons militating against the defendant's proposition.

The first section provides that "Justices of the Peace shall have jurisdiction in all cases of complaints by, for or against Indians, in their respective townships in this State," and the sixteenth section provides that "an Indian convicted of stealing horses, mules, cattle or any valuable thing, shall be subject to receive any number of lashes not exceeding twenty-five, or shall be subject to a fine not exceeding two hundred dollars, at the discretion of the Court or jury," and section seventeen gives the Justice the discretion to appoint a white man or an Indian to do the whipping in his presence.

The Attorney-General asks if the punishment prescribed is not "cruel and unusual," and therefore unconstitutional? We think it is liable to that objection, notwithstanding it is directed by the Act that the Justice "shall not permit unnecessary cruelty in the execution of the sentence."

Besides this, the Act of 1856, (Wood's Digest, 337,) defines both grand and petit larceny and prescribes the punishment to be inflicted upon conviction; and as the Act by its terms is applicable to all cases of larceny, it repeals by necessary implication previous Acts providing a different mode of punishment. The Act of April 20, 1863, concerning Courts of justice of this State organized under the amended Constitution,

confers upon the County Courts jurisdiction to try and determine indictments for grand larceny, and does not confer upon Justices of the Peace jurisdiction in such cases, and thus in effect it takes from Justices of the Peace, whose powers it is provided in the Constitution " shall not in any case trench upon the jurisdiction of the several Courts of record," the jurisdiction of grand larceny attempted to be conferred upon them by the sixteenth section of the Act of 1850, for the protection and punishment of Indians.

The defendant also assigns as error the refusal of the Court to instruct the jury "that proof of possession of property recently stolen is not of itself sufficient evidence upon which to convict the prisoner of larceny." This instruction is marked " given," and the record shows that the Court instructed the jury that "if the horse was stolen and immediately after being stolen, was found in the possession of the prisoner, and the prisoner failed to account for such possession, or to show that such possession was honestly obtained, it is a circumstance tending to show his guilt." If the instruction upon that point had there closed, the prisoner would have had no cause of complaint, but the Court immediately added, " in fact, in such a case, the burden of proof is on the prisoner to show the possession to be lawful." The burden of proof, in respect to any point in the case, is cast upon the prisoner only in consequence of a *prima facie* case having been made against him. The people must make out their case by evidence that will amount to proof of the facts alleged in the indictment, and the defendant is not required to produce evidence to rebut such evidence on the part of the prosecution, as merely tends to prove the fact in question ; but when evidence has been introduced, either direct or presumptive, sufficient to prove the fact in issue, then the defendant is called upon to rebut the *prima facie* case made against him.

The learned Judge of the Court below was not without authority to sustain that portion of his charge, for it is said in 2 Wharton's Am. Crim. Law, Sec. 1,777, that " the possession of property recently stolen is *prima facie* evidence of guilt in

the possessor of the property." But that doctrine has been modified in this State. In *People* v. *Chambers*, 18 Cal. 382, it is held that the possession by the defendant of property recently stolen, is not of itself sufficient to authorize his conviction, but is a circumstance to be considered in determining his guilt. (See 3 Greenl. Ev. Sec. 31.) In *People* v. *Ah Ki*, 20 Cal. 177, the instruction of the Court below, stating that the burden of proof was thrown upon the defendant, of explaining his possession of goods recently stolen, was under consideration, and the Court held the instruction to be erroneous. Mr. Justice Norton, in delivering the opinion of the Court, after holding that the instruction was erroneous, says: "If this charge could be understood as only stating that the accused was bound to explain the possession, in order to remove the effect of the possession as a circumstance to be considered in connection with other suspicious facts, it would not be erroneous." The proof of possession, together with proof of other circumstances indicative of guilt, would make a *prima facie* case against the defendant, and thereupon the burden of proof would be shifted to the defendant. It will be readily seen that under the rule laid down by the Court below, a person who had honestly come into possession of property recently stolen, might be convicted of larceny from the accidental circumstance that no one was present when he found the property dropped by the thief in his flight, or bought it from the thief.

It is to be regretted that this inaccuracy is found in the instructions, which, in other respects, are expressed in terms of commendable clearness and precision.

Section four hundred and seventeen of the Criminal Practice Act provides that the jury may render a general or special verdict, except on an indictment for libel, in which case it shall be general. It would have been improper for the Court to have directed them to render a special verdict, as asked for the defendant; but the Court, upon the request of either party, should direct them that they have the discretion

Points decided.

as to rendering a general or special verdict, in accordance with the provisions of that section.

The other errors assigned do not require any consideration. Judgment reversed and cause remanded for a new trial.