[Crim. No. 1268.   Second Appellate District, Division Two.—May 3, 1926.]

## THE PEOPLE, Respondent, v. ALLAN RODWAY, Appellant.

**[1]** CRIMINAL LAW—BURGLARY—EVIDENCE—CORPUS DELICTI—CONFESSION.—In a prosecution for burglary, the two elements of *corpus delicti* are, certain facts forming its basis, and the existence of criminal agency as to the cause of them; and to establish the *corpus delicti*, to render admissible the confession of the defendant, it is not essential to show that the crime charged was committed by the defendant.

**[2]** ID.—CORPUS DELICTI—EVIDENCE.—In this prosecution in which the defendant was charged, in two counts, with the crimes of burglary, one count charging burglary in the second degree based upon the taking of certain jewelry and personal effects from an apartment, and the other count charging burglary in the first degree based upon the taking of money and certain personal property from a store, the evidence was sufficient, aside from the defendant's confession, to prove the *corpus delicti*.

**[3]** ID.—PRIOR CONVICTION OF FELONY—CREDIBILITY OF DEFENDANT—MISCONDUCT OF DISTRICT ATTORNEY.—In such prosecution, where the defendant testifies that he had been convicted of a felony and that the felony was highway robbery, and the district attorney in the course of his argument refers to the defendant as a self-confessed felon, and the court, upon objection being made by defendant, admonishes the district attorney to confine the remarks about prior conviction of a felony to merely the force and effect of impeaching the defendant's own testimony, and instructs the jury that said testimony only goes to the credibility of defendant as a witness, misconduct may not be predicated upon the further remark of the district attorney, "Very well, then, ladies and gentlemen. *Let's merely consider the question of the fact that he is a highway robber as going to the credibility of his testi-*

---

1.  See 8 Cal. Jur. 165.

mony. Nevertheless, he has been caught at the present time in the commission of two burglaries," to which further remark no exception is taken, nor is any request presented to the court to admonish the jury concerning it.

[4] ID.—THEFT OF CHECK—EVIDENCE.—In such prosecution, the trial court did not err in allowing the contents of a certain check to go to the jury, where the complaining witness identified the check as having been written on a blank taken from his place of business, and that his signature thereto had been forged, and another witness testified fully as to the circumstances surrounding the sending of the check to her by defendant, the cashing of the check by her, and the payment by her to defendant of the balance of the proceeds after she had deducted what defendant owed her; and, although it was not shown that said witness was acquainted with defendant's handwriting, the chain of circumstances established by the evidence justified the court in permitting said witness to testify to the contents of the letter which came to her with the check.

---

(1) 16 C. J., p. 771, n. 23, 24.   (2) 9 C. J., p. 1074, n. 6.   (3) 16 C. J., p. 896, n. 85, p. 906, n. 8.   (4) 16 C. J., p. 618, n. 16, 17.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Elliott Craig, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. C. Hunting for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

WORKS, J.—Defendant was charged, in two counts, with the crimes of burglary. Under the first count he was convicted of burglary in the second degree. Under the second count he was convicted of burglary in the first degree. He appeals from the judgment of conviction and from an order of the trial court denying his motion for a new trial.

[1] Appellant made a confession of his guilt of each of the crimes with which he was charged. He contends as to each count that the *corpus delicti* was not proven, by evidence aside from that contained in the confession, in that there was a failure to prove that he was connected

with the commission of the crime. Such a showing, however, is not a necessary item in the proof of the *corpus delicti.* "The two elements of *corpus delicti* are: 1. Certain facts forming its basis; and 2, the existence of criminal agency as to the cause of them. To establish the *corpus delicti* it is not essential to show that the crime charged was committed by the defendant" (*People* v. *Flores,* 34 Cal. App. 393 [167 Pac. 413]. See, also, *People* v. *Britt,* 62 Cal. App. 674 [217 Pac. 767]).

[2] We are not certain that, irrespective of the question just mentioned, appellant intends to present the point that the evidence was insufficient, aside from the confession, to prove the *corpus delicti.* We shall assume, however, that he does. The evidence under the first count, excluding that embraced in the confession, showed, according to appellant's brief, that one McCaleb and his wife resided in a certain apartment; that they both left the apartment at 8 o'clock on a given morning, after having locked the doors of the place; that they could not remember whether or not they locked their bathroom window before their departure; that they returned to the apartment at 6 o'clock on the evening of the same day; that on their return there were missing from the apartment certain canceled checks and insurance papers, a cape and a coat, a black handbag, certain articles of old jewelry, two or three pairs of shoes and two tie pins; that on their return their bathroom window "had been pulled down even with the bottom section and was still open"; and that on their return "there were finger-prints and footprints on the bathroom window in dust on the top of the window." In addition to this showing in appellant's brief, respondent directs our attention to evidence to the effect that the missing articles were in the apartment when the McCalebs departed in the morning; that the old jewelry consisted of some rings and a lavalliere; that one of the articles which were missed was a fur; that Mrs. McCaleb saw the fur in the apartment on the morning when she and her husband left the apartment; that she saw the coat and the cape there on the preceding evening; and that neither of the McCalebs had given permission to anyone to enter the apartment or to remove any of the missing articles therefrom. This evidence was sufficient to prove the *corpus delicti,* as it tended to show that there

was a burglarious entry of the apartment and that the articles were removed through a criminal agency. There is nothing in *People* v. *Vertrees,* 169 Cal. 404 [146 Pac. 890], which precludes such a view.

In proof of the *corpus delicti* under the second count of the charge, there was evidence which tended to show that the complaining witness, one Gloege, was a storekeeper; that he closed and locked his place of business at 6:30 o'clock on a certain evening and that he reopened it at 7:30 the following morning; that when he entered the store in the morning and went to his desk he found his cash drawer partly open and his cash boxes gone from it; that he had locked the drawer on leaving the night before, but that on his return he found it pried open; that the glass in the back door to his premises was broken and that the door was unlocked and unbolted, having been fastened from the inside by means of a key and a bolt; that the glass was broken in such a manner that it "gave him just room enough to reach on the inside and unlock and unbolt the door"; that Gloege, on his return to the store in the morning, missed several articles of small personal property, some checks, one of which was for the sum of $110, and cash in the amount of about $114.65; and that he had given no one permission to enter his place of business or to remove therefrom any of the property mentioned. This evidence furnished complete proof of the *corpus delicti.*

[3] During the trial appellant testified that he had been convicted of a felony and that the felony was highway robbery. In the course of the argument the following occurred: "[A Deputy District Attorney]: Now, ladies and gentlemen of the jury, you are dealing here with a self-confessed felon, a man who has taken the stand and admitted he has been convicted of highway robbery. He has been caught here in two burglaries committed in this county. [Counsel for Defendant]: I think that is improper argument, if it please the court. That is only relevant as to his credibility as a witness, and so forth. The Court: Counsel is correct in his statement. Confine the remarks about prior conviction of a felony to merely the force and effect of impeaching the defendant's own testimony. . . . It only goes to the credibility of the witness, and the jurors are so instructed. [The Deputy]: Very well, then,

ladies and gentlemen. Let's merely consider the question of the fact that he is a highway robber as going to the credibility of his testimony. Nevertheless, he has been caught at the present time in the commission of two burglaries." It is now contended that the deputy district attorney, in what he said in his argument after the remarks of the court, was guilty of misconduct. In that portion of his argument, however, the officer merely acquiesced in the very proper admonition of the court, and then, in the last sentence of the excerpt from the record, stated his view of the effect of the evidence under the charges upon which appellant was on trial. There was here no misconduct. It is not amiss to observe, also, that no exception was taken to that part of the argument to which objection is now made, nor was any request presented to the court to admonish the jury concerning it.

[4] One of the checks which was missed by the complaining witness Gloege, when he arrived at his place of business on the morning after it was burglarized, bore the rubber-stamped number 120. The number had been stamped on the check by Gloege himself, but at the time it was abstracted from his place of business it was otherwise blank. While he was on the witness-stand, Gloege was shown a check bearing a rubber-stamped number 120, but which, in addition, had been otherwise filled out. It was then dated December 18, 1924, which was a date two weeks later than that on which Gloege's store was burglarized, it was payable to Mrs. M. Moyer, was drawn for $75 and bore a signature, "A. Gloege." The complaining witness testified that this signature was not in his handwriting, but the check as filled out was identified by him as the same check, numbered 120, which he had missed from his premises, although he testified on cross-examination that the rubber stamp with which he had stamped the number 120 was of an ordinary kind, not specially made for him, and bought by him on the open market. He also testified, however, that the number on the filled out check was of the same size and appearance as the one which he had placed on the blank check which was stolen from him. The check, as filled out, was marked for identification in connection with Gloege's testimony. It should be remarked that, in addition

to the matters above stated, the check bore the indorsements, "Mrs. M. Moyer" and "Mrs. W. A. Moyer."

Mrs. Mary Moyer was examined as a witness for the prosecution. She testified that the indorsements on the check numbered 120 were in her handwriting; that the check came to her through the mail on December 21, 1924; that she had a conversation with appellant the day before the check was received by her, in which he asked her if she had then received "the check," and she told him she had not; that the envelope which contained the check when it came to her also contained a letter, but that she had destroyed the letter; that on the next day after she got the check she had a second conversation with appellant, during which he again asked if she had received "the check," and she told him that she had and that she had cashed it; that in the letter which came to her with the check, "He just stated he had sent me the check and told me to get it cashed and keep from the amount of the check when I got it cashed what he owed me, and he would meet me over at the Pacific Electric station and I should give him the rest of the money, which I did"; that her second conversation with appellant occurred at the Pacific Electric station; and that the check identified by Gloege was the same check that she received through the mail. This testimony went in over the objections of appellant. The check was received in evidence, also over appellant's objection.

Appellant contends that the trial court erred in allowing the contents of the check to go to the jury. We think not. The identification of the paper by Gloege, the fact that appellant first told Mrs. Moyer that he had mailed a check to her, the fact that he asked her later if she had received it and was told that she had and that she had cashed it, the fact that he accepted from her the proceeds of the particular check she had received after she had deducted "what he owed" her—all these circumstances, we think, sufficiently connected him with the paper and showed that it had passed through his hands.

It is also contended that the court erred in permitting Mrs. Moyer to testify to the contents of the letter which came to her with the check. We think the chain of circumstances just mentioned is sufficient to uphold the action

of the court in this regard, although it was not shown that Mrs. Moyer was acquainted with appellant's handwriting.

Judgment and order affirmed.

Finlayson, P. J., and Craig, J., concurred.